UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| NAUTILUS INSURANCE COMPANY, | |
| Plaintiff, | |
| v. | CAUSE NO.: 2:18-CV-190-TLS |
| JDW INC. d/b/a He Ain't Here Lounge, AMY COLLINS, and JAMES MICK, | |
| Defendants. | |

**OPINION AND ORDER**

This matter is before the Court on a Motion for Summary Judgment [ECF No. 19], filed by the Plaintiff, Nautilus Insurance Company, on February 7, 2019. Nautilus is a commercial general liability insurer for JDW Inc. d/b/a He Ain't Here Lounge, providing coverage for certain liabilities that may arise from operating the He Ain't Here Lounge ("Lounge"). JDW, Amy Collins, and other unidentified Lounge employees were sued by James Mick in Indiana state court after Mick was struck by a car in the Lounge's parking lot. As a result of Mick's lawsuit, Nautilus seeks a declaratory judgment that it has no duty to defend or indemnify JDW and Collins against any claims asserted by Mick in the underlying lawsuit. For the reasons below, Nautilus' Motion for Summary Judgment is GRANTED.

**FACTUAL BACKGROUND**

On December 3, 2017, Herbert Foust was at the Lounge. Mick 2d Am. Compl. 1–2, ¶¶ 1, 12–13, ECF No. 35-1. He was drinking alcohol and being served by Collins and two other Lounge employees. *Id.* at 2, ¶¶ 6–7, 12. At some point in the night, Foust became intoxicated. *Id.* at 2, ¶¶ 12. He was then forced to leave the Lounge and was escorted out of the building. *Id.* at 2,

¶ 13. This was not Foust's first incident at the Lounge as he had apparently been barred from the establishment on a previous occasion. *Id.* at 2, ¶ 14. Once outside, Foust got into his car and attempted to exit the parking lot. *Id.* at 2, ¶ 9. In doing so, he struck James Mick—a pedestrian located outside the Lounge—twice with his car. *Id.* at 2, ¶¶ 8–11. Mick alleges that "the collisions described might have been due to Foust's intoxication." *Id.* at 2, ¶ 15. As a result of this incident, Mick suffered serious injuries that required treatment. *Id.* at 3, ¶ 16.

After the incident, Lake Station Police Officer McCann arrived on scene and recounted his findings in a Probable Cause Affidavit. *See* McCann Aff., ECF No. 25-1. Officer McCann interviewed some witnesses who stated that Foust was removed from the Lounge after shouting racial slurs and other profanities. *Id.* at 2. The witnesses told Officer McCann that Foust got into his vehicle and struck Mick twice with his car. *Id.* One witness said that when hitting Mick with his car, Foust had "displac[ed] the concrete parking blocks" outside of the Lounge. *Id.* Officer McCann observed that two parking blocks were displaced and resting against the building. *Id.* at 1; *see also* Ex. C, ECF No. 25-1 (pictures of displaced parking blocks). Officer McCann also talked with Collins, who reported that Foust had drunk "two Twelve Ounce glasses of Coors Light and 1 shot of Jack Daniels," and that she asked Foust to leave once she learned he had been barred from the Lounge. McCann Aff. 2.

On January 19, 2018, Mick filed a complaint against JDW, Collins, and two unidentified Lounge employees ("Does 1–2") in Indiana state court. Mick Compl. 1, ECF No. 1-1; *see Mick v. JDW Inc., et al.*, No. 45D11-1801-CT-00013 (Ind. Super. Ct. filed Jan. 22, 2018). Since then, Mick amended his complaint twice to add additional claims and include Foust as a defendant. *See* Mick Am. Compl., ECF No. 20-1; Mick 2d Am. Compl. In his Second Amended Complaint—the operative complaint in the state court litigation—Mick asserted eight claims for

relief: (1) statutory negligence under Indiana's dram shop act against JDW, Collins, and Does 1–2; (2) common law negligence against JDW, Collins, and Does 1–2; (3) respondeat superior against JDW, Collins, and Does 1–2; (4) negligent hiring, training, and supervision against JDW, Collins, and Does 1–2; (5) negligence in failing to maintain its premises against JDW, Collins, and Does 1–2; (6) negligence against Foust; (7) punitive damages against Foust; and (8) failure to provide adequate protection/security to patrons against JDW, Collins, and Does 1–2. *See* Mick 2d Am. Compl. 3–11.

Nautilus was an insurer for JDW at the time Mick was injured outside of the Lounge. *See* Compl. 2–3, ¶¶ 5, 9, ECF No. 1. Nautilus issued a commercial general liability insurance policy to JDW ("Policy"), which provided coverage for liabilities that may arise out of owning and operating the Lounge. *See* Policy 10, ECF No. 1-2. Nautilus agreed to "pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies." *Id.* at 11. The Policy also provides that Nautilus "will have the right and duty to defend the insured against any 'suit' seeking those damages." *Id.* The Policy covers "bodily injury" and "property damage" only if it "is caused by an 'occurrence' that takes place in the 'coverage territory.'" *Id.* An "occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." *Id.* at 25. In addition to liabilities arising from bodily injury and property damage, the Policy also covers certain "personal and advertising injury" liabilities as well as "medical expenses" that result from accidents. *See id.* at 16, 18. The Policy limits Nautilus' coverage through specific exclusions, including, among other things, exclusions for liquor liability, aircraft, auto, and watercraft liability, assault and battery liability, and punitive damages. *See id.* at 12–16, 27–38, 40–45, 52–

53. Overall, Nautilus agrees under the Policy to pay $300,000 for each covered occurrence, up to an aggregate limit of $600,000. *Id.* at 10.

## PROCEDURAL BACKGROUND

On May 11, 2018, Nautilus filed a Complaint for Declaratory Judgment [ECF No. 1], seeking a determination that it owed no duty to defend or indemnify JDW, Collins, and any Lounge employees against claims arising out of the December 3, 2017 incident. Nautilus alleges that three Policy exclusions preclude coverage of Mick's claims: (1) the Total Liquor Liability Exclusion; (2) the Unmanned Aircraft, Other than Unmanned Aircraft, Auto and Watercraft Exclusion; and (3) the All Assault or Battery Exclusion. Compl. 3–8, ¶¶ 12–18. Accordingly, it seeks a declaration that it owes no duty to defend or indemnify JDW, Collins, and any Lounge employees against Mick's lawsuit or any claims arising out of the December 3, 2017 incident based on exclusions in the Policy. *See id.* at 9 (Claim for Relief).

On February 7, 2019, Nautilus filed its Motion for Summary Judgment [ECF No. 19] and a Memorandum supporting its motion [ECF No. 20]. On April 5, 2019, Mick responded by filing a Motion in Opposition [ECF No. 24], and JDW and Collins filed a joint Response opposing summary judgment [ECF No. 26]. Nautilus filed a Reply [ECF No. 28]. Then, on July 30, 2019, JDW and Collins filed a Motion for Leave to Supplement the Summary Judgment Record [ECF No. 31] with Mick's second amended complaint in the underlying lawsuit. They also filed a Motion to Reset Summary Judgment Briefing Schedule [ECF No. 32], which the Court granted. *See* ECF No. 34. Thereafter, Nautilus filed a Supplemental Memorandum supporting its motion [ECF No. 35], Mick filed a Supplemental Memorandum in Opposition [ECF No. 38], and Nautilus filed a Supplemental Reply [ECF No. 39]. JDW and Collins also filed a Supplemental

4

Response opposing summary judgment [ECF No. 37], but they only requested that the Court incorporate their previous arguments.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when the record before the Court establishes that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "To survive summary judgment, the nonmoving party must establish some genuine issue for trial such that a reasonable jury could return a verdict in [their] favor." *Gordon v. FedEx Freight, Inc.*, 674 F.3d 769, 772–73 (7th Cir. 2012). Within this context, the Court must construe all facts and reasonable inferences from those facts in the light most favorable to the nonmoving party. *Frakes v. Peoria Sch. Dist. No. 150*, 872 F.3d 545, 550 (7th Cir. 2017). However, the nonmoving party "is only entitled to the benefit of inferences supported by admissible evidence, not those 'supported by only speculation or conjecture.'" *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 568 (7th Cir. 2017) (quoting *Nichols v. Michigan City Plant Plan. Dep't*, 755 F.3d 594, 599 (7th Cir. 2014)). Likewise, irrelevant or unnecessary factual disputes do not preclude the entry of summary judgment. *Carroll v. Lynch*, 698 F.3d 561, 564 (7th Cir. 2012) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

## ANALYSIS

In deciding issues of insurance coverage, the Court must apply Indiana law for contract interpretation. *See Officer v. Chase Ins. Life & Annuity Co.*, 541 F.3d 713, 715 (7th Cir. 2008) ("When sitting in diversity, we must apply the substantive law of the state as we believe the highest court of that state would apply it."). An insurance contract "is subject to the same rules of interpretation as are other contracts." *Morris v. Econ. Fire & Cas. Co.*, 848 N.E.2d 663, 666 (Ind. 2006) (quoting *USA Life One Ins. Co. of Ind. v. Nuckolls*, 682 N.E.2d 534, 537–38 (Ind.

1997)). In reviewing policy terms, the Court construes them "from the perspective of an ordinary policyholder of average intelligence." *Allgood v. Meridian Sec. Ins. Co.*, 836 N.E.2d 243, 246–47 (Ind. 2005) (quoting *Burkett v. Am. Fam. Ins. Grp.*, 737 N.E.2d 447, 452 (Ind. Ct. App. 2000)). When the contract language is clear and unambiguous, it should be given its plain meaning. *Beam v. Wausau Ins. Co.*, 765 N.E.2d 524, 528 (Ind. 2002). If, however, there is ambiguity in the insurance policy, the terms are to be interpreted against the insurer. *State Farm Mut. Auto. Ins. Co. v. Jakubowicz*, 56 N.E.3d 617, 619 (Ind. 2016). Likewise, any policy exclusions are to be construed in favor of the insured "to further the policy's basic purpose of indemnity." *Id.* (quoting *Meridian Mut. Ins. Co. v. Auto-Owners Ins. Co.*, 698 N.E.2d 770, 773 (Ind. 1998)).

An insurer's duty to defend is broader than its duty to indemnify. *Seymour Mfg. Co. v. Com. Union Ins. Co.*, 665 N.E.2d 891, 892 (Ind. 1996). In determining whether there is a duty to defend, the Court compares "the underlying factual allegations of the complaint with the relevant provisions of the insurance policy." *City of Gary v. Auto-Owners Ins. Co.*, 116 N.E.3d 1116, 1121 (Ind. Ct. App. 2018) (citing *Ind. Farmers Mut. Ins. Co. v. N. Vernon Drop Forge, Inc.*, 917 N.E.2d 1258, 1271–72 (Ind. Ct. App. 2009)). Moreover, the Court "may properly consider the evidentiary materials offered by the parties to show coverage." *Wayne Twp. Bd. of Sch. Comm'rs v. Ind. Ins. Co.*, 650 N.E.2d 1205, 1208 (Ind. Ct. App. 1995). "Only if there is no possible factual or legal basis on which the insurer might be obligated to indemnify will the insurer be excused from defending its insured." *City of Gary*, 116 N.E.3d at 1121 (quoting *Property-Owners Ins. Co. v. Virk Boyz Liquor Stores, LLC*, 219 F. Supp. 3d 868, 873 (N.D. Ind. 2016)).

In this case, two Policy provisions exclude coverage of the claims arising out of the underlying lawsuit: (1) the Unmanned Aircraft, Other Than Unmanned Aircraft, Auto or

Watercraft Exclusion ("Auto Exclusion"); and (2) the Total Liquor Liability Exclusion ("Liquor Exclusion").[1] The Court will discuss each exclusion in turn.

### A.    The Unmanned Aircraft, Other Than Unmanned Aircraft, Auto or Watercraft Exclusion

First, the Auto Exclusion applies to any claims arising out of the December 3, 2017 incident. That exclusion provides, in relevant part:

> **EXCLUSION - UNMANNED AIRCRAFT, OTHER THAN UNMANNED AIRCRAFT, AUTO OR WATERCRAFT**
>
> This endorsement modifies insurance provided under the following:
>
> COMMERCIAL GENERAL LIABILITY COVERAGE PART
>
> A.  Exclusion **g. Aircraft, Auto Or Watercraft** under Paragraph **2. Exclusions** of **Section I - Coverage A - Bodily Injury and Property Damage Liability** is **replaced** by the following**:**
>
> 2.  **Exclusions**
>
>     This insurance does not apply to:
>
>     **g.  Aircraft, Auto Or Watercraft**
>
>     . . .
>
>     **(2) Aircraft (Other Than Unmanned Aircraft), Auto Or Watercraft**
>
>     "Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft (other than "unmanned aircraft"), "auto" or watercraft. Use includes operation and "loading or unloading".
>
>     This Paragraph **g.(2)** applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft (other than "unmanned aircraft"), "auto" or watercraft.

---

[1] Nautilus also argues that other provisions might limit their coverage, including the All Assault or Battery Exclusion, *see* Policy 38, and the Punitive or Exemplary Damages Exclusion, *see id.* at 40. *See* Pl.'s Mem. 18–19, ECF No. 20; Pl.'s Supp. Mem. 20–24, ECF No. 35; Pl.'s Supp. Reply 10–11, ECF No. 39. However, because the Court concludes that the Auto Exclusion and the Liquor Exclusion exclude coverage of all claims arising out of the underlying lawsuit, it need not decide whether those additional provisions also exclude coverage.

Policy 36. "Auto" is defined as "[a] land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment." *Id.* at 23.

This provision excludes coverage of all of Mick's claims because he seeks damages for the injuries he suffered when he was struck by a car. Those claims fall under the exclusion since they are based on a "'[b]odily injury' . . . arising out of the . . . use . . . of any . . . 'auto.'" *Id.* at 36. Indeed, other courts have interpreted a similar Nautilus policy to exclude coverage in comparable circumstances. *See Nautilus Ins. Co. v. Bike & Build, Inc.*, 340 F. Supp. 3d 399, 409–17 (E.D. Pa. 2018) (holding that the policy excludes coverage of a claim based on an individual being struck by a vehicle); *Nautilus Ins. Co. v. 93 Lounge Inc.*, No. 14-CV-01029, 2017 WL 1207528, at *7–8 (E.D.N.Y. Mar. 31, 2017) (holding that the policy excludes coverage of a claim based on an individual being struck by an intoxicated driver). While the complaint highlights other factors that might have contributed to the incident—for example, allowing Foust inside the bar despite being banned and the displaced parking blocks—the fact remains that Foust's use of his car was the "efficient and predominating" cause of Mick's injuries. *See Keckler v. Meridian Sec. Ins. Co.*, 967 N.E.2d 18, 23 (Ind. Ct. App. 2012) (explaining that, in Indiana, the phrase "arising out of" as used in insurance contracts has long been construed to mean the "efficient and predominating" cause). Without Foust's drunk driving, there would not have been an injury or subsequent lawsuit. *See Wright v. Am. States Ins. Co.*, 765 N.E.2d 690, 697 (Ind. Ct. App. 2002). Thus, the Policy excludes coverage of the claims asserted in the underlying lawsuit.

JDW and Collins argue that the exclusion does not apply because it was not the insured's car and the insured was not driving or involved in the accident. *See* Defs. JDW & Collins Resp. 7–9, ECF No. 26. They also argue that the provision's second paragraph seems to apply to

vehicles entrusted to the insured, suggesting that the provision is ambiguous. *Id.* at 9. However, these arguments ignore the exclusion's actual language. There is nothing requiring that the car be owned or used by the insured or its agents; rather, it excludes coverage of incidents caused by "the ownership, maintenance, use or entrustment to others *of any* . . . 'auto.'" Policy 36 (emphasis added). In fact, this exclusion found in the endorsement replaced the original provision in the Policy requiring that a car be "owned or operated by or rented or loaned to any insured." Policy 14. This suggests the intent to exclude most incidents involving cars, as opposed to only those involving the insured's use or ownership of a car. *See Bike & Build*, 340 F. Supp. 3d at 412; *see also Peabody Energy Corp. v. Roark*, 973 N.E.2d 636, 640 (Ind. Ct. App. 2012) (stating that a court is to "ascertain and enforce the parties' intent as manifested in the policy" and, in doing so, will "construe the policy as a whole"). Because the Court will not read additional language or assumptions into the exclusion, JDW and Collins' interpretation fails.

Therefore, because the Unmanned Aircraft, Other Than Unmanned Aircraft, Auto or Watercraft exclusion covers the allegations, there is no obligation for Nautilus to defend or indemnify against the claims asserted in the underlying lawsuit.

**B.     The Total Liquor Liability Exclusion**

The Liquor Exclusion also excludes coverage of the claims arising out of the underlying lawsuit. That provision provides:

**EXCLUSION – TOTAL LIQUOR LIABILITY**

This endorsement modifies insurance provided under the following:

> COMMERCIAL GENERAL LIABILITY COVERAGE PART

Exclusion **c. Liquor Liability** under Paragraph **2.**, **Exclusions** of **Section I - Coverage A. - Bodily Injury and Property Damage Liability** is **replaced** by the following:

> This insurance does not apply to:
>
> **c.  Liquor Liability**

> "Bodily injury" or "property damage" for which any insured or his indemnitee may be held liable by reason of:
>
> **(1)** Causing or contributing to the intoxication of any person, including causing or contributing to the intoxication of any person because alcoholic beverages were permitted to be brought on your premises, for consumption on your premises;
>
> **(2)** The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or
>
> **(3)** Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.
>
> This exclusion applies even if the claims against any insured or his indemnitee allege negligence or other wrongdoing in:
>
> **(a)** The supervision, hiring, employment, training or monitoring of others by that insured; or
>
> **(b)** Providing or failing to provide transportation with respect to any person that may be under the influence of alcohol;
>
> if the "occurrence" which caused the "bodily injury" or "property damage", involved that which is described in Paragraph **(1)**, **(2)** or **(3)** above.

Policy 52.

This provision plainly excludes coverage of Counts I and III in Mick's underlying complaint. Count I seeks to hold JDW and Collins liable for violations of Indiana's dram shop act, Ind. Code § 7.1-5-10-15.5, alleging that Lounge employees served alcohol to a visibly intoxicated Foust and that their negligence caused Mick's injuries. Mick 2d Am. Compl. 3–4, ¶¶ 18–24. Likewise, Count III attempts to hold JDW vicariously liable for its employees "negligently, recklessly, and carelessly furnish[ing] alcohol" to a person they knew or should have known was intoxicated. *Id.* at 5, ¶¶ 31–32. These Counts are excluded from coverage because the insurance does not apply to circumstances where JDW would be liable for "[c]ausing or contributing to the intoxication of any person," "furnishing alcohol to a person . . . under the influence of alcohol," or for violations of "[a]ny statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages." Policy 52.

10

Mick's complaint further asserts claims against JDW and Collins for common law negligence based on breaches of their duty of reasonable care (Count II), negligent hiring, training, and supervision (Count IV), failing to maintain the premises (Count V), and failing to provide adequate protection/security to its patrons (Count VII). Although these claims appear to go beyond negligently furnishing alcohol or contributing to intoxication, they are also excluded under the Liquor Exclusion.

The Indiana Court of Appeals addressed a similar case in *Property-Owners Insurance Company v. Ted's Tavern, Inc.*, 853 N.E.2d 973 (Ind. Ct. App. 2006). There, a man named Wickliff was served four Long Island Ice Teas at a bar and became intoxicated. *Id.* at 976. Wickliff then left the bar and was involved in a head-on car collision that killed the other driver. *Id.* The victim's estate sued the bar and its employees, asserting four claims: (1) negligence; (2) negligent hiring, training, and supervision; (3) violations of the Dram Shop Act; and (4) nuisance. *Id.* The bar's insurer responded with a suit for declaratory judgment, seeking to disclaim any duty to defend or indemnify the bar based on a liquor exclusion. *Id.*[2] Although the trial court granted summary judgment in favor of the insurer on the negligence and dram shop act counts, it granted summary judgment in favor of the victim's estate as to the nuisance and the negligent hiring, training, and supervision counts. *Id.* at 976–77. Notably, those claims included allegations beyond just the bar's negligent furnishing of alcohol. *See id.* at 982–83 (stating that

---

[2] The exclusion in *Ted's Tavern* included language similar to the Policy's Liquor Exclusion. It stated that the insurance did not apply to:
> c. "Bodily injury" or "property damage" for which any insured may be held liable by reason of:
> (1) *Causing or contributing to the intoxication of any person*;
> (2) The *furnishing of alcoholic beverages to a person* under the legal drinking age or *under the influence of alcohol*; or
> (3) Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

*Ted's Tavern*, 853 N.E.2d at 978.

the complaint included allegations that, *inter alia*, the bar and its employees "failed to take appropriate steps to stop the misconduct" and they "failed to properly manage and control the activities" at the bar).

The Indiana Court of Appeals reversed the ruling on the nuisance and negligent hiring, training, and supervision claims. *Id.* at 983–84. It explained that these claims were "general 'rephrasings' of the core negligence claim for causing/contributing to" the drunk driving. *Id.* at 983 (quoting *Wright*, 765 N.E.2d at 695). Rather than being independent of the core claim, the nuisance and the negligent hiring, training, and supervision claims were "so inextricably intertwined with the underlying negligence that there is no independent act that would avoid exclusion" under the insurance policy. *Id.* Thus, the insurer had no duty to defend or indemnify the bar and its employees in the lawsuit. *Id.* at 983–84.

Mick's claims also cannot be separated from the allegations that the Lounge contributed to, or failed to prevent, Foust's intoxication and subsequent drunk driving. In the "Facts Common to All Counts" section of his complaint, Mick alleges that Collins and other Lounge employees "sold and served, and continued to sell and serve alcoholic beverages to Foust until he was intoxicated;" Foust was removed from the Lounge in an "intoxicated state;" Foust struck Mick twice with his car; and that the collisions "might have been due to Foust's intoxication." Mick 2d Am. Compl. 2, ¶¶ 9–15. In Count I, Mick more directly alleges that "the intoxication of Foust from alcoholic beverages furnished to him by Amy Collins" and others at the Lounge "was one of the proximate causes of [Mick's] injuries." *Id.* at 3, ¶ 23. Then, in the Counts that follow, Mick specifically "repeats and realleges" these allegations and "incorporates them" within each Count. *See id.* at 4–10, ¶¶ 25, 30, 37, 41, 47, 51, 54. These allegations show that this case is fundamentally about Foust being served alcohol to the point of intoxication, then driving drunk

12

and injuring Mick. They also make clear that Foust's drunk driving was the efficient and predominating cause of Mick's injuries. *See Ted's Tavern*, 853 N.E.2d at 982. Although Mick asserts different (and broader) theories of negligence, these claims are "inextricably intertwined" with the core negligence claim that is excluded under the Liquor Exclusion. *Id.* at 983. Indeed, these claims appear to be intended to circumvent the clear application of the Liquor Exclusion. *See id.* (explaining that "creative pleading . . . cannot hide the reality that the immediate and efficient cause of the injuries was drunk driving precipitated by the negligent service of alcohol"). But in the end, they will not procure coverage.

Therefore, the claims arising out of the underlying lawsuit are also excluded from coverage under the Total Liquor Liability Exclusion.

**C.    The Defendants' Counterarguments**

In response to Nautilus' motion, the Defendants argue there are independent claims not excluded by the Policy that create Nautilus' duty to defend and indemnify JDW and Collins. These arguments are not sufficient to defeat summary judgment.

First, JDW and Collins contend that there is potential coverage because there are allegations that do not relate to Foust's consumption of alcohol on the night of the incident; specifically, that JDW was negligent for allowing Foust into the Lounge after previous incidents and for not contacting the police. *See* Defs. JDW & Collins Resp. 6. In support of their argument, they rely on *Property-Owners Insurance Company v. Virk Boyz Liquor Stores, LLC*,[3] where the

---

[3] JDW and Collins also note a Seventh Circuit decision cited by *Virk Boyz*, which stated that "dram shop cases in which courts have not applied the [liquor] exclusion involve a separate negligent action performed by an agent of the insured *after* the furnishing of alcohol." *Neth. Ins. Co. v. Phusion Projects, Inc.*, 737 F.3d 1174, 1179 (7th Cir. 2013). That case does not help the Defendants' argument for a few reasons. First, it involved the application of Illinois state law, *id.* at 1177, whereas here, the Court has a directly applicable Indiana case in *Ted's Tavern*. Second, *Phusion* involved a manufacturer/distributor of an alcoholic beverage and, therefore, was not exposed to liability for directly serving alcohol to patrons. *Id.* at 1178–79. And finally, the Seventh Circuit concluded that the negligence claims at issue were "artful

court held that a liquor liability exclusion did not unambiguously exclude coverage for claims related to a bar fight. 219 F. Supp. 3d 868, 875 (N.D. Ind. 2016). Distinguishing *Ted's Tavern*, the court reasoned that the claims for failing to intervene and negligent hiring, training, and supervision, were not "inextricably intertwined" with negligently serving alcohol because they had "nothing to do with the sale of alcohol at all." *Id.* at 874. Those claims were instead related to the bar's negligence in failing to stop an assault and call the police, hiring someone unfit to be a bartender/bouncer, and failing to train an employee to prevent an assault. *Id.*

Unlike *Virk Boyz*, Nautilus does not rely entirely on the Liquor Exclusion, but also argues that the Auto Exclusion applies. As discussed, that provision excludes coverage of injuries arising out of the use of a car, which directly applies to all of Mick's claims. *See* Policy 36. Moreover, as in *Ted's Tavern*, the incident in this case involved drunk driving. Without Foust being intoxicated, and without JDW and Collins contributing to that intoxication, it is not clear how they would have been liable for breaching their duty of care. *See Ted's Tavern*, 853 N.E.2d at 983 n.7 (explaining that "absent Wickliff's intoxication at the time of the accident, . . . it is unfathomable that [the bar and its employees] would have been sued"). Therefore, even the claims asserting different theories of negligence will not procure coverage in light of the Auto Exclusion and Liquor Exclusion.

Second, Mick argues that the failure to maintain the premises claim also creates an independent cause of action that creates a possibility of coverage. *See* Def. Mick Mot. Opp'n 4, ECF No. 24; Def. Mick Suppl. Mem. Opp'n 3–4, ECF No. 38. The failure to maintain claim is premised on some displaced concrete parking blocks outside the Lounge where Mick was struck.

---

pleadings that are not wholly independent from [the insured's] furnishing of alcohol." *Id.* at 1180. Thus, to the extent the Defendants rely on *Phusion* in their argument, that case does not justify denying summary judgment.

Def. Mick Mot. Opp'n 4; Def. Mick Suppl. Mem. Opp'n 3–4. Even assuming the parking blocks had some effect on the incident, that does not change the fact that the "efficient and predominating" cause of Mick's injuries was Foust's use of a car. *See Keckler*, 967 N.E.2d at 23; *see also Grinnell Mut. Reinsurance Co. v. Detamore*, No. 1:17 CV 044, 2018 WL 1709612, at *3–4 (N.D. Ind. Apr. 9, 2018) (concluding that a claim of negligently providing a faulty tire was excluded under the policy because the efficient and predominate cause of the injuries was the use of a car). And further, this claim cannot be disentangled from the core negligence claims related to Foust's drunk driving, which are excluded under the Liquor Exclusion. *See Ted's Tavern*, 853 N.E.2d at 983. Thus, this argument fails to defeat summary judgment.

## CONCLUSION

For the reasons stated above, the Court hereby GRANTS Nautilus' Motion for Summary Judgment [ECF No. 19] and directs the Clerk of Court to enter DECLARATORY JUDGMENT in favor of Plaintiff Nautilus Insurance Company and against Defendants JDW Inc. d/b/a He Ain't Here Lounge, Amy Collins, and James Mick declaring that:

1. Nautilus Insurance Company owed and owes no duty to defend and/or indemnify Amy Collins and/or JDW, Inc. d/b/a He Ain't Here Lounge for the claims asserted by James Mick in the lawsuit, *Mick v. JDW Inc., et al.*, No. 45D11-1801-CT-00013 (Ind. Super. Ct. filed Jan. 22, 2018).

SO ORDERED on November 2, 2021.

s/ Theresa L. Springmann  
JUDGE THERESA L. SPRINGMANN  
UNITED STATES DISTRICT COURT